ERIC GRANT
United States Attorney
ROBERT ABENDROTH
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>JAMES SUTHERLAND,<br>Defendant. | CASE NO. 2:26-CR-00108-DC<br><br>GOVERNMENT'S BRIEF IN SUPPORT OF MOTION FOR DETENTION PENDING TRIAL |

On July 25, 2026, a grand jury returned an indictment charging James SUTHERLAND ("SUTHERLAND") with four counts of money laundering in violation of 18 U.S.C. § 1956(a)(3)(B). Doc. No. 1. At his initial appearance, the government moved for SUTHERLAND's detention pending trial pursuant to 18 U.S.C. § 3142(f)(2)(A). For the reasons that follow, there is a serious risk that SUTHERLAND will flee. Additionally, upon applying the factors in found in the Bail Reform Act, there are no conditions or combination of conditions that will reasonably assure SUTHERLAND's appearance as required and the safety of any other person and the community.

**FACTS AND PROCEDURAL HISTORY**

On June 25, 2026, the grand jury indicted SUTHERLAND for money laundering in violation 18 U.S.C. § 1956(a)(3)(B), commonly referred to as the money laundering statute's sting provision. Specifically, SUTHERLAND laundered funds which had been represented, by a law enforcement agent or a person working under the direction of a law enforcement, to be proceeds generated from a specified

unlawful activity, in this case, unlawful access to a protected computer, in violation of 18 U.S.C. § 1030 (computer hacking).

SUTHERLAND is a citizen of the United Kingdom with permanent resident status in Hong Kong. SUTHERLAND—the Chairman of the Zetland Fiduciary Group—possesses significant personal and professional resources most of which are outside the United States. Zetland's website boasts offices in Hong Kong, Shanghai, Singapore, London, and Dubai. The services Zetland offers in these locations include, among other things, "Nominee Directors," "Offshore Private Trusts," and "Shelf Companies." Concerning "Nominee Directors," Zetland's website boasts:

> In today's global economy, business owners and investors often require privacy or need to meet local directorship requirements. Professional nominee services offer a compliant and discreet solution, ensuring confidentiality while fulfilling all legal and regulatory obligations.[1]

"Shelf Companies"—a commonly used entity to conceal ill-gotten proceeds—are described on Zetland's website thusly:

> Zetland maintains a small stock of already incorporated companies which have never traded - so called "off-the-shelf" companies. These are incorporated in Hong Kong, Singapore, Seychelles and BVI. Clients seeking aged companies can sometimes be accommodated but we advise undertaking detailed due diligence on any acquisition as sometimes there may be liabilities actual or contingent attaching to the entity. Generally new comapnies (sic) may be quickly incorporated in most jurisdictions.[2]

Additionally, "Offshore Private Trusts" are listed on Zetland's website and described as:

> An offshore private trust is a legal arrangement established in a jurisdiction outside the settlor's country of residence, designed to hold and manage assets for the benefit of designated beneficiaries. These trusts are commonly used by high-net-worth individuals and families to achieve a range of objectives including asset protection, succession planning, confidentiality, and tax efficiency.[3]

The above demonstrate that SUTHERLAND, as the chairman of the Zetland Fiduciary Group, possesses unique sophistication, international resources, and contacts in many countries. Zetland advertised their expertise and services to businesses looking for assistance in the global marketplace.

---

[1] Available at https://zetland.biz/services/corporate-services/nominee-directors, last visited October 26, 2026.

[2] Available at https://zetland.biz/services/shelf-companies, last visited October 26, 2026.

[3] Available at https://zetland.biz/services/trusts/offshore-private-trusts, last visited October 26, 2026.

These resources, however, are uniquely suited for illicit businesses and criminals to conceal ill-gotten gains, to evade OFAC Sanctions,[4] and to cheat on taxes. Indeed, the grand jury found that SUTHERLAND did in fact lauder funds use these resources to launder property represented to be proceeds generated from computer hacking.

Additionally, during the investigation, SUTHERLAND also agreed to launder funds represented to be gained from other crimes, including international drug trafficking offenses, sex trafficking offenses, and OFAC Sanctions evasion. Investigators recorded SUTHERLAND's statements when SUTHERLAND met with a confidential informant ("HSI CI"), who—unknown to SUTHERLAND—was working at the direction of Homeland Security Investigations Special Agents. When the HSI CI asked for SUTHERLAND's help to launder money for a "cartel," SUTHERLAND agreed. SUTHERLAND suggested creating non-profit entitles for funneling the cartel's drug proceeds. SUTHERLAND acknowledge the unlawful nature of the funds involved by stating, "these guys are probably doing mainly cocaine rather than anything else."

More troubling was SUTHERLAND's willingness to assist sex traffickers. During discussions with the HSI CI, Special Agents recorded SUTHERLAND's discussions about sex traffickers as follows:

| | |
|---|---|
| HSI CI: | I will just say it the way it is, mate. And you just go, "no I'm not comfortable," or "Yes, I'm comfortable." … Do you know any of your clients or anybody that could, uhm…help-help me with some Asian women, for different countries … looking for working girls that might want to go to a foreign land, but uh-uh… but once they get there, obviously, they're going to be uh… made to work. |
| SUTHERLAND: | Yeah, uh… no, I'm sure we can definitely, sure, yeah. |

---

[4] OFAC Sanctions refers to the economic and trade sanctions issued by the United States Department of the Treasury's Office of Foreign Assets Control (OFAC). OFAC administers and enforces its Sanctions against certain designated foreign jurisdictions and regimes as well as individuals and entities found to engage in activities such as terrorism, international narcotics trafficking, and weapons of mass destruction proliferation. OFAC issues its Sanctions in response to threats to the national security, foreign policy, or economy of the United States. OFAC Sanctions attempt to block the movement or transfer of property belonging to the sanctioned party through financial systems.

As the discussion continued, SUTHERLAND acknowledged the criminal nature of the organization and the risk involved:

> HSI CI: So they- they love Asian women, … if I can- if I can supply some Asian women and, uh… all- all we have to do is transport them, which I can do. And then they would work there.
>
> SUTHERLAND: Okay - okay, we could, but which countries? …. It's uh, this thing of people trafficking is a big problem these days, so uh… if you get caught.

SUTHERLAND inquired into the organization's treatment of sex trafficking victims because, as SUTHERLAND stated, "[the organization] need[ed] to be – you know, you know – reasonable with the girls." In response, the HSI CI stated that the organization "[could not] guarantee that they're all going to get treated [with respect]," and "there might be one or two that, they don't get treated that way." They began referring to the mistreated sex trafficking victims as "collateral damage." Ultimately, SUTHERLAND suggested creating employment contracts for the sex trafficking victims when he stated, "It's doable … We want, uhm… you know, contract for the girls." The HSI CI asked, "Okay, employment contracts?" SUTHERLAND affirmed, "Yeah, yeah." Then, the HSI CI stated, "But these girls, when they get on… when they get on the plane, they-they don't know they're going there to fuck." To which SUTHERLAND replied, "Yes.…They-they will be told that. So-so… so it's all in the contract[.]"

In other discussions, Special Agents recorded SUTHERLAND boasting about his connections to the government of China. In these discussions, SUTHERLAND offered to help individuals and entities subject to OFAC Sanctions in moving their property to evade the OFAC Sanctions.

Following his indictment, agents arrested SUTHERLAND when he flew into the United States on October 25, 2026. Upon his arrival, Customs and Border Protection granted his admission to the United States pursuant to a significant public benefit parole to answer the charges in the indictment.

**LAW AND ARGUMENT**

The government moved for detention pursuant to 18 U.S.C. § 3142(f)(2)(B), which provides for a hearing to determine whether any condition or combination of conditions will reasonably assure the appearance of such person as required and the safety of any other person and the community in a case

that involves a serious risk that the defendant will flee. The charges in the indictment, SUTHERLAND's statements during the investigation, lack of connections to this District, and international resources, demonstrate that there is a serious risk that SUTHERLAND will flee.

SUTHERLAND faces a lengthy period of incarceration if convicted. The four counts of money laundering each carry a maximum term of 20 years of incarceration. *See* 18 U.S.C. § 1956(a)(3). These charges punish those who conceal and disguise the movement of funds, making the crime itself one involving deceit, sneakiness, and dishonesty. SUTHERLAND has significant ties outside the United States and boasted about his connections with the government of China. SUTHERLAND's criminal offense used these connections, international ties, and resources to launder money for a third-party. Now that SUTHERLAND faces the possibility of prison, there is a serious risk that SUTHERLAND will use those same resources to flee to avoid prosecution. Indeed, his knowledge of international law and resources give SUTHERLAND the ability to flee to a jurisdiction without a diplomatic relationship with the United States and successfully avoid prosecution. To make matters worse, SUTHERLAND offered his business acumen to help move property to evade OFAC Sanctions, to assist international drug traffickers, and to help a sex trafficking organization with "employment contracts." SUTHERLAND is a serious flight risk.

## I. In Applying the Factors of the Bail Reform Act, There Are No Conditions or Combination of Conditions That Will Reasonably Assure the Appearance of the Person as Required and the Safety of Any Other Person and the Community.

In considering whether conditions or a combination of conditions of release exist that would reasonably assure the safety of any other person and the community as well as the defendant's presence at future proceedings, the Court must consider the following factors:

> (1) the nature and circumstances of the offense charged, including whether the offense involves … a controlled substance …;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
> > (A) the person's character, … employment, financial resources, length of residence in the community, community ties, past conduct, …; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g)(1-4). All four factors weigh in favor of detention.

In the charged offenses, SUTHERLAND agreed to assist with hiding and concealing assets represented to be the proceeds generated from computer hacking. Although the charged offense is not a controlled substance offense, in the same investigation, SUTHERLAND offered to launder funds for the "cartel," which he believed involved, in SUTHERLAND's words, "cocaine more than anything else." Moreover, the money laundering charged here involved sophisticated deceit. The level of deceit employed by SUTHERLAND makes him inherently untrustworthy, and consequently, a flight risk.

The weight of the evidence is strong. Agents captured SUTHERLAND's statements during meetings, recorded those statements, and documented what had been represented to him. SUTHERLAND engineered the corporate structure designed to disguise money represented to be ill-gotten proceeds. Thereafter, SUTHERLAND received payment for his work, and then, he engaged in financial transactions with property which had been represented to be computer hacking proceeds. All these actions are supported by bank records, recorded meetings, and email communications.

SUTHERLAND's character, employment, financial resources, length of residence in the community, community ties, and past conduct all weigh in favor of detention pending trial. SUTHERLAND's ties are almost exclusively international, and he is a permanent resident of Hong Kong. SUTHERLAND's character, as he demonstrated in the recorded meetings, is that of a sophisticated businessman who offered to use his knowledge and skill to support the most heinous of criminals—computer hackers, international drug traffickers, and sex traffickers—as well as the movement of property to evade OFAC Sanctions. Indeed, he used his international resources and knowledge of global financial systems to exploit those financial systems for profit as he assisted people which he believed to be criminals. This history and character support pretrial detention.

Similarly, the danger posed by SUTHERLAND's release is demonstrated by his eagerness to support sex traffickers with his expertise. The services SUTHERLAND offered, specifically money laundering, are a necessity for organized crime so that criminals may profit from their offenses. If released SUTHERLAND can return to what he was doing during the investigation, that is assisting cartels, sex traffickers, and computer hackers as well as designing structures to skirt OFAC Sanctions. The danger posed by his release is significant. At bottom, there are no conditions or combination of

conditions that will reasonably assure SUTHERLAND's appearance and the safety of any other person and the community as required by the Bail Reform Act.

**CONCLUSION**

For the foregoing reasons, the government respectfully requests that, the Court hold a detention hearing pursuant to 18 U.S.C. § 3142(f)(2)(A). Upon conducting that hearing, the government respectfully requests that SUTHERLAND be ordered detained pending trial.

Dated: October 28, 2026

ERIC GRANT
United States Attorney

By: */s/ ROBERT ABENDROTH*
ROBERT ABENDROTH
Assistant United States Attorney